McKinney, J.,
delivered the opinion of the court.
The plaintiff in error, who is a.slave, was convicted, in the circuit court of Anderson county, of an assault upon William Diggs, a free white person, with intent to commit murder in the first degree. A new trial was refused; and judgment of death having been pronounced upon him, he appealed in error to this court.
Several errors have been assigned and urged in the argument by the counsel for the plaintiff in error. But without *62 intimating any opinion upon other points made in the case, we will confine ourselves to the question — whether the court erred in refusing to grant a new trial upon the matter disclosed in the affidavit of one of the jurors, presented on the argument of the rule.
Before considering the facts set forth in the affidavit, it is proper to state, that on the trial of the case before the jury, it was a seriously controverted matter of fact, whether the offence charged in the bill of indictment had been committed in the county of Anderson, as alleged, or in the county of Roane.
The proof, on the one hand, shows that in 1834 the surveyor of Anderson county, Samuel C. Young, under an order of court, run the division line between said counties, as called for in the act of Assembly defining the boundaries, three different times. And the result was, as proved on the trial by said surveyor, that the house in which the assault was committed, was without the limits of Anderson county, and within the' limits of Roane county, a distance of about forty yards. On the other hand, the declaration of a person who professed to have been present-when the line was originally run, (since dead,) was given in evidence to establish, that, as actually surveyed and marked, said line included the house in question, and that it was within the county of Anderson. There was also proof to show, that the person who occupied said house had, for many years, acted as a magistrate of said county; and that another person, living near said house, had acted as constable in the same county.
The affidavit of Brock, one of the jurors, sets forth, that after the jury had retired to consider of their verdict, “and when they were deliberating upon the question of venue, and whether the offence had been committed within the county of Anderson, and were considering the testimony of Samuel C.. Young, one of the witnesses, it was stated by one of the jurors,” (whose *63 name is mentioned,) “who had not been sworn and examined as a witness, that he had worked on the road in that part of the county; had seen the marked line, and knew that it was a considerable distance beyond the house of Edward Plan-kins, (in whose house the offence is said to have been committed,) and that Hankins’ house would be in Anderson, and not in Roane; and that Keith, who lived on the same place with Hankins, but still nearer the county line, had served as constable in Anderson county near two years. William Huekaby, also, a juror, — but who was sworn and examined as a witness, — informed affiant, that his brother Thomas had showed him where the marked line run between Roane county and Anderson; and that it run so as to leave said Han-kins’ house in Anderson county.”
The bill of exceptions shows, that said Brock, in answer to interrogatories propounded to him, in connection with the affidavit, stated: “That the information communicated by his fellow jurors, exercised no influence whatever upon him in making up the verdict; and, he thinks, none upon the other jurors; and he believes they would have come to the same result from the testimony in the cause. The information given by Huekaby, was imparted after the jury had decided upon the verdict.”
In the determination of the general question, whether the improper conduct of the jury in receiving further evidence, after the case was closed, touching the charge upon which they were called to pass, has the effect of vitiating their verdict, it is not for us to consider, whether or not the evidence in respect to the venue, properly submitted to the jury on the trial, was sufficient to support the verdict, in our judgment. Neither is it relevant to inquire what iriflence the improper evidence received by the jury, may, or ought to have exerted upon their minds in settling the disputed question of venue.
It is sufficient for our purpose, that, in reference to a ma *64 terial point, necessary to be established by the prosecutor, in order to justify a conviction, there was, to say the least, apparently conflicting evidence submitted to the jury on the trial, the proper effect and weight of which, it was their province to determine; and that after leaving the bar, to consult and determine upon their verdict, and while in the act of doing so, they received fresh evidence, the effect of which — if, indeed, it were not wholly without effect — mnst have conduced, in some degree, to the decision of the controverted point against the prisoner.
The question is, can the verdict, under such circumstances, be permitted to stand? Clearly not.
In ancient times, the established doctrine in England was, that without the production of any evidence whatever by the parties, the jury might found their verdict upon their own private knowledge of the facts in controversy; nay further, that they had as much right to be governed by such private know • ledge, as by the eviden ce of witnesses delivered in court on the trial. The oath of the jurors, to find according to their evidence, was construed to mean, that they should do so according to the best of their own knowledge. 3 Bl. Com., 374, and note g. And so long as they were liable to attaint for a false verdict, with all its terrible penalties, there was certainly some show of reason in the ancient doctrine. But when the proceeding by attaint fell into disuse, and a new trial, in case of a wrong verdict, was introduced, the idea of a verdict being found upon the private knowledge of the jury was exploded. And the opposite doctrine has ever since obtained; that the verdict of the jury must be found upon the evidence delivered to them in court, in the presence of the judge and of the parties. And as a consequence, necessarily flowing from this doctrine, the rule was established, at an early day, that if a juror possessed any knowledge in respect to the matter in issue, as to which he might testify, he must be *65 sworn as a witness and give his testimony openly in court, as other witnesses. 3 Bl. Com., 375.
Such is the long established and inflexible rule, to which no exception can be admitted, either in civil or criminal cases. In criminal cases, more emphatically, there can be no exception, under our law; because, among other rights absolutely-secured by the constitution to the accused, in all criminal prosecutions, is the right “to meet the witnesses face to face." Art. I, sec. 9.
The rule thus established, that the verdict must be found upon the evidence produced upon the trial — and without which the trial by jury, as it exists with us, would too often be perverted to purposes of the grossest injustice and oppression— has been departed from in the case before us. And upon what ground can such departure be vindicated? Is it, that, in the opinion of the judge there was evidence enough adduced upon the trial to justify the finding of the jury; and that the evidence improperly given by the juror to his fellow jurors, could have had no influence upon the verdict? If so, the answer is, that this was purely a matter of fact, not within the province of the judge to determine. It is impossible that he should be able to do so; because the law has no criterion by which to know or ascertain the effect which the admission of improper evidence — if of any force or relevancy whatever — may produce upon the verdict of the jury. The •effect might be different, and of necessity would be so, upon different minds, according to the mental and moral qualities •of the individuals composing the jury, their intelligence, powers of discrimination, and a thousand other considerations. And, therefore, the law excludes all irrelevant and illegal •evidence from the jury.
The statement of the juror, that the facts disclosed in the jury-room, produced no effect upon his mind; and, he thought, none upon the minds of the other jurors, is to be taken with *66 great allowance. It is to be expected, that when interrogated by the court, and made sensible of the impropriety ■ of his conduct, he would seek to obviate the consequences. He may not have been aware of any influence exerted upon his mind. But to those accustomed to observe how slight a circumstance often preponderates, when the mind is left in a state of doubt from the evidence, and that, too, in reference to those whose daily employment it is to discriminate and nicely weigh evidence, this statement of the juror will not go for much. And his assuming to judge of the effect upon other minds, will go for as little.
But to vitiate the verdict in this case, the proof is not upon the prisoner to show, affirmatively, that he was prejudiced by the improper evidence received by the jury. It is enough that he may have been prejudiced, and the law will so presume. See 4 Yerg. 114. 6 Humph. 276.
The judgment will be reversed, and the case be remanded for a new trial.