JOHNNY TROGLEN, Plaintiff in Error,

*v.*

STATE OF TENNESSEE, Defendant in Error.

392 S.W.2d 925.

(*Nashville,* December Term, 1964.)

Opinion filed July 30, 1965.

Jim Camp, Lucius H. Camp, Sparta, Harry W. Camp, McMinnville, for plaintiff in error.

George F. McCanless, Attorney General, Marne S. Matherne, Assistant Attorney General, for defendant in error.

Mr. Justice Holmes delivered the opinion of the Court.

The plaintiff in error, Johnny Troglen, hereinafter referred to as defendant, was indicted for obtaining money by unpaid check, in violation of T.C.A. sec. 39-1904. By the terms of that Code Section, this offense is "punishable as in the case of larceny". The jury found the defendant guilty of petit larceny. He was sentenced to confinement in the County Jail for eleven months and twenty-nine days and to pay a fine of $10.00. His motion for a new trial was overruled, and he has duly perfected his appeal and filed assignments of error.

The first two assignments question the sufficiency of the evidence to support the verdict.

Only one witness was offered by the State. He testified that on the night of November 10, 1963 he was in the Moose Club near Sparta, Tennessee, that on that occasion the defendant and a number of other people were gambling. The State's witness stated that the defendant came to him and requested him to cash the defendant's check in the amount of $700.00 that he inquired of some people at the club as to the validity of the defendant's check and, after being informed it was probably good, the defendant wrote the check and the prosecutor gave him $700.00 in cash.

The prosecutor further testified that in due course he presented the defendant's check to the First National

Bank of Sparta, on which it was drawn, and payment of same was refused because of insufficient funds. He further stated that notice, as provided by the statute, was given and the check was again presented to the drawee bank and payment refused on the same grounds. This witness denied that he had been engaged in gambling with the defendant and denied that he owed the defendant any money. He further denied that any part of the proceeds of the check in question represented money owed to him by the defendant for a gambling debt. This witness, on cross examination, further denied that at a later time he had been engaged in a game of chance with the defendant in which he lost to the defendant an amount equal to the check and denied ever making any agreement to return the check to the defendant in satisfaction of any losses sustained by this witness to the defendant.

The defendant, Troglen, testified in his own behalf. He admitted writing the check in question on the occasion testified to by the prosecutor, but stated the check was in payment of a gambling debt to the prosecutor. He testified that the prosecutor was engaged in the gambling in which defendant was participating on the night of November 10, 1963. The defendant further testified that shortly after the date on which the check was written he and the prosecuting witness, with others, were again gambling at the Moose Club and that he won from the prosecuting witness an amount equal to or exceeding the amount of the check, and that it was agreed between him and the prosecutor that the defendant would accept the check which is the basis of this prosecution in payment of the prosecutor's losses to the defendant, that the prosecutor did not have the check with him at the time, but agreed to return it to the defendant the next day, which was not done.

The defendant admitted the receipt of notice of nonpayment of the check, as required by T.C.A. sec. 39-1904, and stated that he did not intend that the check be paid because he had won at gambling the amount of the check from the prosecuting witness. The defendant denied that the State's witness gave him cash for the check, as testified by the witness. The defendant admitted several prior convictions for violation of liquor laws. He admitted that he engaged in gambling to some extent, but denied being a professional gambler, and denied any prior convictions other than those relating to the liquor laws.

The defendant offered another witness who testified he was in the Moose Club on the night the check was written. This witness testified that at one time during that night the defendant and the prosecuting witness had been gambling together. This witness stated he heard a discussion being carried on at the time the check was written and understood from the discussion that at least a portion of the amount of the check represented gambling losses due the prosecuting witness by the defendant, but this witness could not swear that this check was given for the gambling debt. No other witnesses testified at the trial.

It thus appears that there is a sharp conflict in the testimony as to whether or not the prosecutor was a participant in the gambling in which defendant was engaged on the night the check was given, also whether or not the prosecutor gave the defendant $700.00 in cash for the check. There is also a direct conflict in the testimony of the prosecutor and the defendant with reference to whether or not on a subsequent date these parties engaged in gambling transactions in which the prosecutor lost to the defendant an amount equal to or exceeding the

amount of the check. No complaint is made of the Trial Judge's charge to the jury and it is not included in the record before us, so we can only conclude that the Trial Judge fully and fairly charged the jury the applicable law.

 From the decision of this Court in *Cooper v. State,* 123 Tenn. 37, 138 S.W. 826, to the present time, it has been repeatedly held that the verdict of the jury approved by the Trial Judge accredits the testimony of the witnesses for the State and resolves all conflicts in the testimony. Such verdict removes the presumption of the innocence of the defendant and raises a presumption of his guilt and places upon the defendant here the burden of showing that the evidence preponderates against the verdict and in favor of the defendant's innocence. See *McBee v. State,* 213 Tenn. 15, 19 and 20, 372 S.W.2d 173, and cases cited therein. Also, this Court has repeatedly recognized that:

"* * * The jury and the trial judge see and hear the witnesses face to face and are in a far better position to determine who is correctly detailing the truth of the matter than are we who see only the record." *Gann v. State,* 214 Tenn. 711, 383 S.W.2d 32, 34 and 35.

 Under these well settled rules, the jury in the present case has resolved the conflicts in the testimony of the witnesses, determined the credibility of those who testified, and accredited the theory of the State on the issues made by the evidence. In the present case where the evidence of the State is diametrically opposed to that of the defense on the crucial issues, the verdict of the jury approved by the Trial Judge determines where the preponderance of the evidence lies. Assignments of error numbers one and two are overruled.

By the third and final assignment of error it is asserted that there was misconduct on the part of the jury in its deliberations which constitutes reversible error. In support of this assignment, the defendant offered the affidavit and testimony of two of the members of the jury which tried the case at the hearing on the motion for a new trial.

The affidavit of these two jurors states that during the deliberations of the jury Mr. Sam Agee, one of the jurors, made many statements to the jury in respect to his view that the defendant was guilty, at one point Juror Agee stated, "I have a stack of bad checks in my office (indicating with his hands about four inches). We have to put a stop to it. This would be as good a time as any."

The affidavit further states that Juror Agee stated, "This is not the first time for Johnny," and then started to relate some of the past history in respect to the defendant, but stopped that statement and said, "No need to say anything else about that, except that, Johnny has been in Court before." According to the affidavit, Mr. Agee further stated during the jury's deliberations, "We have to do something to get out of here. If we do not, we will have to stay all night." He further said, "It makes no difference what we do, he will get a new trial anyhow."

Juror A. J. Barlow, one of the two affiants, further made affidavit that this was his first experience on a trial jury; that he was impressed with the statements made by Mr. Agee and thought, in view of the many things that were said, that Mr. Agee was speaking with authority, and it was upon that basis that he finally agreed to the verdict.

454

The record shows that on the hearing on the motion for new trial Juror Goins, the other affiant, was first offered by the defendant as a witness. This juror testified Mr. Agee was elected Foreman of the Jury and testified to substantially the same statements made in the affidavit. Upon inquiry by the Court, Mr. Goins stated that these occurrences in the jury room did not affect his verdict. The narrative bill of exceptions shows the following transpired:

"A. J. Barlow was then called as a witness for the defendant on said motion. He stated almost the same thing that the witness, Casto Goins, stated. In addition thereto he said that it was stated by someone in the jury room that they must agree on something or they would have to stay all night, and that it made no difference what they did, Johnny would get a new trial any way.

"In response to an inquiry by the Court of this witness as to the source of the new trial the witness stated that he did not know how the new trial was to be had by the defendant.

"Thereupon, the Court made inquiry of the Attorney General as to whether or not he cared to introduce the other members of the jury. The Attorney General elected not to introduce any of them."

The above quotation from the record shows that the only evidence offered on the motion for a new trial was that of Jurors Goins and Barlow, so their testimony must be accepted as correctly reflecting what transpired during the jury's deliberations.

In the defendant's brief it is asserted that the matters testified to by these two jurors bring this case within the

rule stated by the Court in *Briggs v. State,* 207 Tenn. 253, 338 S.W.2d 625, and the earlier cases of *Sam v. State,* 31 Tenn. 61, *Morton v. State,* 69 Tenn. 498, and *Ryan v. State,* 97 Tenn. 206, 36 S.W. 930.

In Briggs, the defendant was convicted of voluntary manslaughter. His defense was self defense. During the deliberations of the jury, one of the jurors, who was a neighbor of the defendant, stated to the other jurors that Briggs had a bad temper and would kill you if he got mad, and that he had killed his brother. In Briggs, this Court reversed the conviction and remanded the cause for a new trial. In so doing, the Court distinguished *Smith v. State,* 205 Tenn. 502, 503, 327 S.W.2d 308, and *Kirkendoll v. State,* 198 Tenn. 497, 281 S.W.2d 243. With reference to Smith, the Court in Briggs stated:

"In the Smith case it was shown that the jurors probably read the newspapers and heard radio announcements (This was not testimony in the sense herein given. It was more or less a rehash of what had been or was going on in the trial.), but for the reasons set forth in that opinion we, too, held that that was harmless error." 207 Tenn. at 256, 338 S.W.2d at 626.

In Kirkendoll, the defendants were convicted of murder in the first degree. During the course of the jury's deliberation there one of the jurors compared the case on which the jury was deliberating with the celebrated Greenlease kidnapping case in arguing to the other jurors that the supreme penalty should be exacted in the Kirkendoll case. In holding there was no reversible error in Kirkendoll, the Court stated:

"* * * It seems to us that the evidence on this question offered on the motion for new trial, even though it does

456

show that the Greenlease case was mentioned, that it was not the inducement that persuaded the jury to return the death penalty, but, to the contrary, the jurors made up their minds from the evidence presented and the mention of the Greenlease case was casual. Naturally and normally the parties on the jury, having different ideas about what should be done, are going to argue with the other members of the jury trying to carry their point. This is the only human result to be expected in this life of human beings. These plaintiffs in error complain rather bitterly about this and cite and rely upon the well known rule that no juror is allowed to mention to his fellow jurors any facts within his own knowledge *with regard to a case on trial that have not been introduced in evidence. Ryan v. State,* 97 Tenn. 206, 36 S.W. 930. Such a rule has its obvious merits and we recognize it as a salutary rule but we do not think that the rule has any application here. The Greenlease case and any discussion of it had nothing to do with the facts of the instant case—the facts are entirely different.'' (Emphasis added) 198 Tenn. at 512, 513, 281 S.W.2d at 250.

In Kirkendoll, the Court then cited and quoted from cases holding that references made by the prosecuting attorney in his argument to the facts of other causes tried in the court in which convictions were had did not constitute reversible error and stated:

''If the District Attorney General (normally we think that his argument should be more persuasive with the jury than the arguments of another juror) is allowed to refer to convictions as historical facts of other cases by way of illustration or persuasion, it seems to us that this same reasoning would apply when the juror to his

fellow jurors uses such reasoning. It is our well considered opinion that this does not constitute reversible error." 198 Tenn. at 513, 281 S.W.2d at 250.

The present Chief Justice spoke for the Court in the Briggs case, the Kirkendoll case, and the Smith case. In Briggs, it is stated that *Ryan v. State,* supra, was distinguished in Kirkendoll "because in that case the factual situation was entirely different from that here, and was more in line with that of the Steadman [199 Tenn. 66, 282 S.W.2d 777] or the Smith cases" 207 Tenn. at 257, 258, 338 S.W.2d at 627.

The question for determination in the case *sub judice* is whether the statements attributed to the Juror Agee fall within the rule stated in Briggs, or within the rule stated in Kirkendoll. It is to be noted that the Juror Agee first stated his conviction as to the guilt of the defendant and then referred to the fact that the juror had a stack of bad checks and that a stop should be put to the practice of giving bad checks. There is no suggestion that any of the bad checks referred to by the Juror Agee were checks of the defendant, or that his statement about having the bad checks related to any of the issues to be passed upon by the jury in determining the guilt or innocence of the defendant.

The statement of the juror, that this is not the first time for Johnny and that Johnny has been in Court before, did not bring before the jury evidence relating to the defendant which had not been testified to at the trial because the record shows that the defendant admitted a number of convictions for violation of the liquor law. There does not appear to have been any objection to this line of questions, so that these statements related to matters which had been testified to on the trial.

In *Irvine v. State*, 104 Tenn. 132, 56 S.W. 845, during the deliberations of the jury, one of the jurors told his fellow jurors that, if they knew what he knew and he was allowed to tell it, they would be in favor of conviction. In holding that this statement did not constitute reversible error, the Court stated:

" 'This court has repeatedly had occasion to comment upon the danger of setting aside verdicts upon the affidavits of jurors, and to declare that it will be done only in extraordinary cases, and then with great caution.' The wisdom of and the necessity for a judicious observance of this rule are possibly more apparent today than when it was announced. Hardly a jury trial takes place in a case of any importance, whether civil or criminal, but that the privacy of the jury room is opened by a disclosure of what occurred there, by one or more jurors, in affidavits, which are made the predicate of a motion for a new trial. * * While verdicts have been set aside, and properly, when a juror has communicated to his fellow jurors *facts bearing on the issue which were not adduced on the trial*, yet we know of no case where a mere suggestion of undisclosed knowledge was permitted to have such an effect." (Emphasis added) 104 Tenn. at 143, 144, 56 S.W. at 847.

In each of the cases cited in the brief of the defendant a member of the jury communicated to his fellow jurors facts bearing on the issue which were not adduced at the trial. In *Sam v. State*, supra, there was a seriously controverted issue of fact as to whether the offense charged in the indictment had been committed in Anderson County or in Roane County. During the jury's deliberations, one of the jurors told his fellow jurors facts per-

sonally known to him, which had not been introduced in evidence, relating to the exact location of the county line at the place the offense was committed. In *Morton v. State,* supra, the defendant was charged with larceny. While considering its verdict, one of the members of the jury stated to the other jurors "that the prisoner had theretofore stolen sheep, money and other things from his father." In *Ryan v. State,* supra, the defendant was on trial for murder. During the course of the trial, one of the members of the jury told his fellow jurors that he had been a member of the Grand Jury that indicted the defendant for a felonious assault upon one Kehoe and that the proof before the Grand Jury was that Kehoe was stooping, with his head down, and the defendant struck him with a monkey wrench. In each of these cases, facts bearing on the issue before the jury which were not in evidence on the trial were given to the jury by one of their number.

■ If a new trial were to be granted in every case where at some point during the deliberations extraneous matters are stated by a juror, few verdicts could stand. In a case such as the present, where the evidence of the defendant and that of the State are diametrically opposed, some latitude must be allowed the jury in the statements made during their deliberation, provided evidence bearing on the issue to be determined by the jury and not introduced at the trial is not given by one or more of the jurors.

In *Briggs v. State,* supra, the Court quoted with approval from an extended annotation appearing in 58 A.L.R.2d 556, relating to the subject under discussion. We have again examined this annotation. A reading of the pertinent cases from other jurisdictions there refer-

red to strengthens our conclusion that the present case comes within the rule stated by this Court in *Kirkendoll v. State,* supra, rather than the rule stated in Briggs.

No evidence bearing on the issues to be decided by the jury, which was not introduced in the trial, was given the other jurors by the Juror Agee. The narrative bill of exceptions shows that Juror Goins testified the statements of Juror Agee did not affect his verdict and that Juror Barlow "stated almost the same things that the witness, Casto Goins, stated."

 The constitutional right of the defendant to meet the witnesses face to face was not denied defendant in the present case, and it is not shown that he was prejudiced by the statements of Juror Agee. Although the amount of defendant's check was $700.00, the jury found him guilty of the offense of petit larceny and fixed his punishment at confinement in the County Jail for eleven months and twenty-nine days, as is authorized by T.C.A. sec. 39-4205, as amended. Certainly, no prejudice is shown in the punishment fixed by the jury.

This assignment of error is overruled, and the judgment of the Trial Court is affirmed.

NOTE: This opinion was prepared by MR. JUSTICE ANDREW O. HOLMES and approved by all members of the Court prior to his death on July 24, 1965, and was released by the Court on July 30, 1965.