## BOBBY CHADWICK, Plaintiff in Error, v. STATE OF TENNESSEE, Defendant in Error.

Court of Criminal Appeals of Tennessee. April 5, 1968.

Certiorari Denied by Supreme Court June 17, 1968.

Carl E. Colloms, William A. Prince, Cleveland, for plaintiff in error.

George F. McCanless, Atty. Gen. of Tennessee, George W. McHenry, Jr., Asst. Atty. Gen., Nashville, for defendant in error.

## OPINION

OLIVER, Judge.

The plaintiff in error, herein referred to as the defendant, was convicted of grand larceny in the Criminal Court of Bradley County and was sentenced to not less than three nor more than five years in the State Penitentiary. One Jerry Lee Howard, who was jointly indicted and tried and received the same sentence, has not appealed. Both having been found to be indigent by the trial court, court-appointed counsel represented them in the trial and are representing Chadwick here.

His motion for a new trial being overruled, the defendant has perfected an appeal in the nature of a writ of error to this Court, and has assigned errors.

In his first Assignment of Error, the defendant contends that the evidence preponderates against the verdict and in favor of his innocence. In considering this Assignment, we must be guided by the well-established law of this State that a conviction in a criminal case will not be reversed on the facts unless it is shown that the evidence preponderates against the verdict and in favor of the innocence of the accused; that the burden is upon the defendant here to show that the evidence does so preponderate; and that the presumption of innocence, which the law throws around one accused of crime, initially and in his trial, disappears upon conviction in the trial court and is displaced by a presumption of guilt upon appeal. A most excellent statement of the

legal effect of the verdict of the jury and the law governing appellate review was made by Mr. Justice Felts in Carroll v. State, 212 Tenn. 464, 370 S.W.2d 523:

"This argument overlooks the legal effect of the verdict of the jury, and also the law governing appellate review. The jury and the Trial Judge saw the witnesses face to face, heard them testify, and observed their demeanor on the stand, and were in much better position than we are, to determine the weight to be given their testimony.

\* \* \* \* \* \*

"On appeal, therefore, the jury's verdict is to be taken as establishing the truth of the case. In civil cases the verdict will not be disturbed on the facts if it is supported by any material evidence. In criminal cases, out of tenderness to human life or liberty, the rule is more lenient: The verdict will be disturbed on the facts only if the evidence clearly preponderates against it and in favor of the innocence of the accused. Cooper v. State, 123 Tenn. 37, 56, 153, 138 S.W. 826.

"As said so often by this Court, the jury's verdict of guilt, approved by the Trial Judge, establishes the credibility of the witnesses supporting the verdict, displaces the presumption of innocence that attended defendant on the trial, raises a presumption of his guilt, and puts on him the onus of showing on appeal that the evidence preponderates against the verdict and in favor of his innocence. Cooper v. State, supra, 123 Tenn. 37, 56-61, 153, 138 S.W. 826; Turner v. State, 188 Tenn. 312, 322, 219 S.W.2d 188; Batey v. State,

191 Tenn. 592, 596, 235 S.W.2d 591, 593; Ivy v. State, 197 Tenn. 650, 652, 277 S.W.2d 363; Anderson v. State, 207 Tenn. 486, 341 S.W.2d 385.

"So, under the law by which we are bound, we may review the evidence only to determine whether it preponderates against the verdict and in favor of the innocence of defendant; and in such review we must take the verdict as having established the credibility of the State's witnesses."

For other cases so holding see: Brooks v. State, 187 Tenn. 361, 215 S.W.2d 785; Cole v. State, 187 Tenn. 459, 215 S.W.2d 824; Walker v. State, 197 Tenn. 452, 273 S.W.2d 707; Liakas v. State, 199 Tenn. 298, 286 S.W.2d 856; Nichols v. State, 200 Tenn. 65, 289 S.W.2d 849; Stoots v. State, 205 Tenn. 59, 325 S.W.2d 532; Smith v. State, 205 Tenn. 502, 327 S.W.2d 308; Farmer v. State, 208 Tenn. 75, 343 S.W.2d 895; White v. State, 210 Tenn. 78, 356 S.W.2d 411; King v. State, 210 Tenn. 150, 357 S.W.2d 42; Staggs v. State, 210 Tenn. 175, 357 S.W.2d 52; Rowan v. State, 212 Tenn. 234, 369 S.W.2d 543; Lester v. State, 212 Tenn. 338, 370 S.W.2d 405; McBee v. State, 213 Tenn. 15, 372 S.W.2d 173; State v. Fowler, 213 Tenn. 239, 373 S.W.2d 460; Grant v. State, 213 Tenn. 440, 374 S.W.2d 391; Wilkerson v. State, 214 Tenn. 1, 377 S.W.2d 1; McKinnie v. State, 214 Tenn. 195, 379 S.W.2d 214; Kirby v. State, 214 Tenn. 296, 379 S.W.2d 780; Gann v. State, 214 Tenn. 711, 383 S.W.2d 32; Bacon v. State, 215 Tenn. 268, 385 S.W.2d 107; Arterburn v. State, 216 Tenn. 240, 391 S.W.2d 648; Shiflet v. State, 216 Tenn. 365, 392 S.W.2d 676; Sanders v. State, 216 Tenn. 425, 392 S.W.2d 916; Troglen v. State, 216 Tenn. 447,

392 S.W.2d 925; Watkins v. State, 216 Tenn. 545, 393 S.W.2d 141; Burrus v. State, 216 Tenn. 586, 393 S.W. 2d 159; Chico v. State, 217 Tenn. 19, 394 S.W.2d 648; Brenner v. State, 217 Tenn. 427, 398 S.W.2d 252; Pryor v. State, 217 Tenn. 695, 400 S.W.2d 700; Monts v. State, 218 Tenn. 31, 400 S.W.2d 722; Patterson v. State, 218 Tenn. 80, 400 S.W.2d 743.

■ On the 12th of December, 1966 Mr. James H. Taylor left his home about 10:30 p.m. When he returned about 3:00 a.m. the next morning, a window had been broken and the back door was open, and his General Electric color television set was gone. About a week later, accompanied by Deputy Sheriffs T. E. Humberd and Bud Davis, he went to the trailer home of Peter Manson where he found and identified his missing TV set.

Peter Manson had known Jerry Lee Howard and Bobby Chadwick about a year. A few days prior to December 12, 1966 in a conversation with them, he had mentioned that he was interested in a color television for Christmas. During the night of December 12, between 10:00 and 10:30, he received a telephone call from an unidentified person, inquiring if he wanted to buy a TV; he told the caller that he was interested in one for Christmas. Shortly thereafter, both of the defendants went together to see Manson and talked about a television. About 45 minutes to an hour later, between 11:00 and 11:30, Jerry Lee Howard, accompanied by a man unknown to Manson, delivered the television set to Manson, told him that it belonged to a woman who was separated from her husband and wanted to sell it; Manson helped him unload it, and

paid him $200 for it. The defendant Bobby Chadwick was not with Howard at that time. The day before the trial, both of these defendants called upon Manson at his home and advised him that he should "just more or less be in doubt over my answers," "just think before I answered any questions," and "just be doubtful."

Deputy Sheriff T. E. Humberd and another officer were on regular patrol on the night of December 12. At approximately 11:00 or 11:15, Jerry Lee Howard and Bobby Chadwick crossed the street in a Chevrolet station wagon in front of them. These officers had orders to pick up Bobby Chadwick in connection with his appeal of a case to the Supreme Court of Tennessee. For that reason they followed the vehicle. Jerry Lee Howard was driving, and pulled into Billy Ogle's driveway on West Oak Drive. When the officers pulled into the driveway behind the station wagon, Jerry Lee Howard got out and went up to and started knocking on Billy Ogle's door. Bobby Chadwick got out and came to the officers and was placed under arrest upon the pick-up order from the Supreme Court. With their headlights shining into the station wagon, Officer Humberd saw a General Electric color television set in plain view inside the vehicle. Being suspicious about it, he wrote down and rechecked the serial number on the television set, by looking at it from outside the vehicle and without ever touching it or the vehicle. Bobby Chadwick was taken to jail. Jerry Lee Howard was not questioned or arrested. About 3:00 or 3:30 a.m. of the same night James Taylor reported that his television set had been stolen, and later produced its serial number. Learning where he had purchased the television, Officer

Humberd went to that store and found that the number on the set sold to Mr. Taylor corresponded with the number Mr. Taylor had given to him and with the number which he copied from the television set which he saw in the Chevrolet station wagon. He and other officers later accompanied Mr. Taylor to Mr. Manson's residence, where Taylor identified the set as his, and Officer Humberd identified it by the serial number as being the same set he saw in the station wagon.

The defendant Bobby Chadwick did not testify or offer any evidence at the trial. Jerry Lee Howard testified that the Chevrolet station wagon belonged to Dean McKenzie; that he borrowed it at Paul Holt's garage, without the knowledge of McKenzie, about 10:30 or 11:00 o'clock that night, because he had wrecked his own car earlier that night; that McKenzie had left his car at Paul Holt's garage to have some work done on it and had left the keys in it; and that he had known McKenzie about five years, and they had driven each other's cars before; that he wanted Paul Holt to pull his own car in, and started driving around looking for him; that he picked up Bobby Chadwick at the shopping center, and they drove to the home of Billy Ogle, who is Paul Holt's shop foreman, to find out where Holt was; that there was a television set in McKenzie's station wagon; that after the officers arrested Bobby Chadwick at the Billy Ogle home, he returned the station wagon and parked it where he found it and hitch-hiked home about 2:00 o'clock in the morning; that he never at any time talked to Peter Manson about a television set and did not sell one to him; that he did not call Manson up earlier that night about a television set and did not

go to his house and talk to him about it, and did not deliver any television set to him; and that the day before the trial he went to see Manson to ask him to be definitely sure about everything that he said and that "if he wasn't sure of it not to tell the jury because it meant my life in the pen." "We told him to think and to be sure because it was us that was on trial."

Considered in the light of the law governing appellate review established by the authorities cited, as we are bound to do, the testimony of the State's witnesses amply sustains the jury's verdict of guilty.

The defendant's second Assignment of Error is that the trial court erred in not sustaining the defendant's motion to exclude the testimony of Deputy Humberd which was upon the ground the search of the vehicle in which the defendant was riding was unlawful because it was not made pursuant to a lawful arrest or a search warrant. There is no merit in this contention. The evidence clearly establishes that there was no search of the vehicle, that it was neither touched nor entered, and that the television set in the rear of it was so clearly visible from the light of the officers' patrol car that the serial number could be read from the outside of the vehicle. Manifestly, no search was involved when Officer Humberd looked through the window of the station wagon and saw the television set and wrote down the serial number. Merely to observe and look at that which is in plain sight is not a "search." It is not a search to observe that which occurs openly in a public place and which is fully disclosed to visual observation. United States v. Williams (C. A., Sixth

Cir.), 314 F.2d 795 (1963); Batchelor v. State, 213 Tenn. 649, 378 S.W.2d 751. Obtaining information by means of the eye, where no trespass has been committed in aid thereof, does not constitute an unlawful search. Bone v. State, 207 Miss. 868, 43 So.2d 571. To observe what is open and patent, in either sunlight or artificial light, is not a search. Smith v. United States, 4 Cir., 2 F.2d 715; United States v. Strickland, D.C., 62 F. Supp. 468; 79 C.J.S. Searches and Seizures § 1, p. 776.

In his third Assignment of Error, the defendant contends that the trial judge erred in not declaring a mistrial after making the statement in the absence of the jury that he felt an officer who knew the defendants would be justified in stopping and searching any vehicle in which they might be riding after dark, because it was "A good bet" they had committed larceny. As this Assignment states, the judge's comments were in the absence of the jury. Nothing further is necessary to demonstrate that such comments of the trial judge, even if unwarranted and indiscreet, were not heard by the jury and could not have influenced them in their consideration of the case. Nor is there any showing whatsoever that the trial judge was not impartial or that he was prejudicially influenced by past dealings with the defendant in court, or that the defendant did not have a fair and impartial trial. It was, therefore, not an abuse of his judicial discretion when the trial court refused to declare a mistrial. Etter v. State, 185 Tenn. 218, 205 S.W.2d 1; Jones v. State, Tenn., 403 S.W.2d 750.

Upon a careful review of this record, we find no

error. The Assignments of Error are overruled and the judgment of the trial court is affirmed.

WALKER, P. J., and GILLIAM, J., concur.