Loyd D. King

*v.*

State of Tennessee.

357 S.W.2d 42.

(*Jackson,* April Term, 1962.)

Opinion filed May 4, 1962.

JAMES T. SANDERSON, Memphis, for plaintiff in error.

GEORGE F. MCCANLESS, Attorney General, THOMAS E. Fox, Assistant Attorney General, Nashville, for State.

MR. JUSTICE WHITE delivered the opinion of the Court.

The plaintiff-in-error, defendant, Loyd D. King, was indicted, tried and convicted for rape and was given a prison sentence of ten years. He has appealed to this Court and assigned errors that (1) there is no evidence to sustain the verdict of the jury and that the verdict of the jury is against and contrary to the weight and preponderance of the evidence; (2) the law and evidence preponderate against the verdict of the jury and the verdict of the jury is contrary to both the law and the evidence; and (3) that as a matter of law the evidence does not sustain the offense of rape.

The facts are substantially that the defendant stands convicted of the rape of his sister-in-law who with her husband and eight children lived next door to him on a farm owned by Nealy Robley.

On the morning of July 29, 1961, the wife of the defendant and the sister of the prosecutrix left her home to visit her mother in Arkansas for the week-end, leaving

their three children in the care and custody of her said sister.

Shortly after Mrs. King departed her home to visit her mother in Arkansas, the defendant, Loyd King, and his brother-in-law, husband of the prosecutrix, left their homes on this Saturday morning at about 8:30 or 9:00 o'clock to engage in "a little drinking spree" about the county.

At about 3:30 o'clock on the following morning, that is on Sunday morning, July 30, 1961, the two men parted company with the understanding that the defendant would go get one of their buddies "Leb Doolen" and return with him to a residence in Madison County, Tennessee, where his companion remained with a woman, whose name does not appear in the record.

The defendant instead of locating Leb Doolen went directly to the home of the prosecutrix which, as aforesaid, was located next to his own home. According to the best evidence in the record, upon arrival he sounded the horn of his automobile and awakened her. She was in her home with her eight children and the three children belonging to her sister and the defendant. When she came to the front porch of her home the defendant informed her that her husband would be in serious trouble unless she went with him to get him and bring him home. Upon receiving this information she went back into her house, awakened her twelve year old daughter, told her of the situation and stated that she was going with L. D., the defendant, after her Daddy, and that she would not be gone over thirty (30) minutes. The daughter was advised to lock the door after the mother left.

154

She then got in the automobile, clothed in her pajamas and a housecoat or a duster, and the two of them proceeded along Neely Station Road to a dirt road where the defendant stopped the car. The defendant then told her that her husband was enjoying the company of a woman and that they might as well do the same thing. She refused the offer and tried to get out of the car by opening the right front door. The defendant grabbed the door, closed it and then, according to her testimony, "he (defendant) kept pushing at me, I tried to get away, I couldn't, he overpowered me, he held me." "I pushed at him" to try and stop him for about ten (10) minutes. "I told him when he started if he would turn me loose then I would forget about it, if he didn't I was going to call the law when I got up to Mr. Robley's". (Their landlord).

The prosecutrix further testified that the defendant pushed her back on the seat, held her with his arms and the weight of his whole body and during the course of the struggle he pulled off part of her clothing and tore or damaged her panties, during all of which time she "begged and pleaded with him to turn me loose".

She testified that she weighed only about ninety (90) pounds, and that the defendant weighed about one hundred and ninety (190) pounds. She said that she resisted the efforts of the defendant and scratched his face when her hand was free. She did not scream or cry out in order to attract attention. She admitted that defendant did not threaten her or cause her to believe that he might hurt her if she failed to submit, and further that she was not afraid of the defendant. There is no reason given in the record why the prosecutrix should be afraid of the defendant, but to the contrary the evidence shows

that they were in-laws and were on friendly terms prior to this occasion.

On cross-examination the prosecutrix was asked:

"Q. You didn't make any attempt to avoid what occurred other than crying and begging him to stop?

"A. I tried to get up but I couldn't.

"Q. You are stating to the gentlemen of the jury that this man forcibly and against your will and without your consent,—.

"A. That's right; he sure did.

"Q. That is the truth?

"A. That's right."

The defendant returned the prosecutrix to her home, put her out of the car and then returned to the company of her husband, his brother-in-law, and started drinking again with him and his female companion. They remained together until about 4:00 o'clock P.M. on the same date when the sheriff of Madison County or one of his deputies arrested the defendant upon a charge of rape according to a warrant which had been previously sworn out.

Mrs. Nealy Robley testified that about 6:00 A.M. on the day in question the oldest daughter of the prosecutrix came to her house and gave her certain information which caused her to go to her home where she found her crying and very disturbed and almost hysterical. She then reported to Mrs. Robley what had occurred between her and the defendant. After some conversation, Mrs. Robley put her in her automobile and took her to her home in order that she might tell Mr. Robley what had occurred.

When she arrived at the Robley home she was crying and so upset for a few minutes that she could not relate to Mr. Robley what had occurred. Upon questions from him she told him in detail exactly the same story that she had told to Mrs. Robley. The officers were called and arrived at the Robley home at about 9:00 o'clock and she repeated her story to them in the presence of both Mr. and Mrs. Robley and they say that she told them exactly the same story as she had related to them previously. She was still crying and very upset at this time. She was still upset a day or two later when Mrs. Robley carried her to her family physician. She also told the Robleys about her torn clothing and exhibited to them the torn dress. These witnesses did not observe any bruises on her body, but she did tell them that her arm was hurting at the point where it had been held across the steering wheel by the defendant. She also said that her side was hurting her.

The two officers who went to the home of Mr. Robley both testified and they corroborated the testimony given by Mr. and Mrs. Robley.

The husband of the prosecutrix testified that he and the defendant were together on the day in question and that both of them were drinking heavily and were drunk. He said that the defendant left him at about 3:00 A.M. at a road house in Madison County and said that he was going to pick up one of their buddies. The defendant returned about three hours later and started drinking again, and reported that he couldn't locate the buddy. This witness said that he fled the scene when the officers arrived to arrest the defendant for fear that he might be arrested for being publicly drunk. He said that when

he arrived home he found his wife in bed and that she was crying and that she told him what had happened.

There is some variance in the testimony of the defendant from that of the prosecutrix, the difference in the main being that he denies the charge of rape. However, there are inconsistencies in his testimony and at one point he admitted telling a falsehood.

The jury considered the testimony of all the witnesses who appeared on the trial in this case and they accredited the witnesses for the State and discredited those for the defendant.

■ It is the rule in this State that the verdict of the jury, approved by the trial judge, accredited the testimony of the witnesses for the State, and established their credibility. It also displaced the presumption of the defendant's innocence, raised a presumption of his guilt and put upon him the onus of showing that the evidence preponderates against the verdict and in favor of his innocence. *Anderson v. State,* 207 Tenn. 486, 341 S.W.2d 385.

The defendant complains that the testimony of certain of the witnesses was not admissible because not a part of the res gestae, and further that such testimony was merely hearsay, depending for its validity upon declarations made by the prosecutrix some several hours after the commission of the alleged offense.

In the case of *Phillips v. State,* 28 Tenn. 246, the Court said:

"Where the injured party is examined as a witness, on a trial for rape, her statement of the circumstances, or particulars of the complaint, made recently after

the commission of the offense, are admissible as confirmatory of her credibility; so held, where the statements were made to the husband on the morning of the second day after the act.''

In the Phillips case the prosecutrix stated that the rape occurred on Wednesday at about 12:00 o'clock noon and she did not tell her husband about it until on the following Friday morning. His testimony relating this conversation was objected to but the objection was overruled and the action of the trial court in admitting the testimony was affirmed by this Court.

T.C.A. Section 39-3701 provides in part as follows:

''Rape is the unlawful carnal knowledge of a woman, forcibly and against her will. * * *''

There is nothing in the statute making it mandatory that the testimony of the violated female be corroborated. However, there is usually some degree of corroboration which is admissible and is admitted to support and give weight to the testimony of the prosecutrix. If the jury believes from all the competent evidence introduced for their consideration that the defendant did have unlawful carnal knowledge of the prosecutrix forcibly and against her will then it would be justified in finding the defendant guilty as charged. The jury is required to find beyond a reasonable doubt that the act was committed by force, violence, intimidation or threats and against the will and consent of the female who must have resisted the attack in every way possible and continued such resistance until she was overcome by force, was insensible through fright, or ceased resistance from exhaustion, fear of death or great bodily harm.

■ In cases of rape the law does not require that the female be corroborated. However, statements of the circumstances, or particulars of the offense, made by the injured female in such cases when made shortly after the commission of the offense are admissible as confirmatory of her credibility where she is examined as a witness and such statements may be proved by the person to whom they were made, as in this case.

■ The defendant contends that the force required by the statute was not present in this case. The determination of its presence or absence is a question of fact for determination by the jury upon a proper charge from the Court.

The defendant relies upon the case of *Benstine v. State*, 70 Tenn. 169, 174, where the Court observed:

"The crime of rape is one hard to disprove, and experience has shown that where the charge rests upon the testimony of the injured female alone, there is sometimes danger of unjust conviction, * * *"

While this statement appears in one of our older cases, the law in this State now is that corroboration of the female is not required in a case of this kind. However, testimony of corroboration, as here, is admissible as confirmatory of the credibility of the injured female, and our Court has so held throughout many years.

■ It is difficult to define the force required to sustain a conviction under the statute because of the difference in testimony and circumstances in each case, but as a general proposition we believe the statement found in Anderson Wharton's Criminal Law and Procedure,

Volume 1, page 639 is consistent with prior holdings of our Court.

"The degree of force required to constitute rape is relative depending upon the particular circumstances but in any case it must be sufficient to subject and put the dissenting woman within the power of the man and thus enable him to have carnal knowledge of her notwithstanding good faith resistance on her part. Nor is it necessary that there should be force enough to create 'reasonable apprehension of death,' nor that the female was injured by the use of force. But it is necessary to prove in such case that the defendant intended to complete his purpose in defiance of all resistance."

■ Quoting further from the same work on the resistance required of the female, we approve this statement on page 640:

"As to the degree of resistance which will exclude the conclusion or inference that the female gave her consent, it is generally held that she need only make such resistance to the force of the defendant as seems reasonable to offer under the circumstances, such as the relative strength of the parties, the age and condition of the female, the uselessness of resistance and the degree of force manifested. While some of the earlier cases required that she go beyond this and resis to the utmost, the modern view does not require this."

The statute requires that the act must be forcibly and against the will of the female. Forcibly and against her will means exactly what the language imports; that is,

force means power, compulsion or strength directed toward an end. And against her will means against or without her consent express or implied.

▆▆▆ The question of whether or not the defendant employed force in the commission of the act and whether or not it was against the will or consent of the prosecutrix is most certainly a question of fact to be determined by the jury from a consideration of all the evidence in the case. As we have stated, if the jury believes from such evidence that the defendant violated the statute aforesaid, then it would be the duty of the jury to convict.

We have carefully considered the record in this case and all assignments of error, and we can find nothing that would justify this Court in reversing the verdict of the jury and the judgment thereon of the Trial Court. We are satisfied that this defendant is guilty as charged. Therefore, all assignments of error are overruled and the case is affirmed at the cost of the defendant.