Noah **LUNDY**, Plaintiff-in-Error,

v.

**STATE** of Tennessee, Defendant-in-Error.

Court of Criminal Appeals of Tennessee.

Aug. 30, 1974.

Certiorari Denied by Supreme Court
March 10, 1975.

Dale C. Workman and Geoffrey D. Kressin, Knoxville, for plaintiff in error.

David M. Pack, Atty. Gen., Bart C. Durham, Asst. Atty. Gen., Nashville, Lance D. Evans and John W. Gill, Jr., Asst. Dist. Attys. Gen., Knoxville, for defendant in error.

## OPINION

RUSSELL, Judge.

The plaintiff-in-error, Noah Lundy, indigent and represented by appointed counsel, appeals his convictions for rape and a crime against nature and consecutive penitentiary sentences of one hundred twenty (120) and five (5) to fifteen (15) years.

The alleged rape victim, Sharon Murphy, was enticed into Lundy's automobile by Lundy's fourteen-year-old female companion, Terri Tankersly, at his direction, on the pretext of giving the victim a ride home. Miss Murphy had walked alone to a neighborhood market to purchase soft drinks shortly after 8 p. m. It had begun to rain. She entered the car in response to an offer of a ride in the belief that the couple lived in the neighborhood. Lundy did drive her past the apartment where she was living, but refused to stop the car. The victim testified that after passing her home Lundy restrained her by grabbing her arm, subsequently ordered her to change places with the other girl by moving to the center seat position, and as they continued to drive ordered her to remove all of her clothing. The victim asked Terri Tankersly if she had to, and was given an affirmative answer. Lundy told the victim that he would knock her brains out if she didn't undress. Scared and crying, Miss Murphy completely disrobed. Lundy put his hand between her legs, she slapped it and he removed it. At Lundy's direction Terri Tankersly blindfolded the victim with Miss Murphy's bra.

When the three arrived at Lundy's apartment the victim was allowed to put back on her shorts and a jacket and was led inside. Terri Tankersly brought the balance of her clothing. Once inside the apartment Lundy ordered her to complete-

ly disrobe again, and to get upon the bed. Her blindfold was removed at her request. He also undressed. The victim asked for a drink of water, which the other girl got for her. Lundy made her drink some whiskey from a bottle from which he was imbibing. He then ordered Miss Murphy to lie on the bed. She testified that he took her hands and held them up over her head as he commenced intercourse.

Miss Murphy at no time fought, screamed, ran or in any way resisted the intercourse. No weapon was ever used or displayed by Lundy. Miss Murphy was concerned that they would hurt, or kill her; and begged them not to. It seems fair to say that the victim was more apprehensive about possibly being hurt or killed than she was about being sexually violated, as she was passively submissive. It cannot be denied, however, that she was totally within the power of her captors, and her obedience to submission orders must be weighed in that context.

After the first act of intercourse, which apparently did not result in a sexual climax for Lundy, he ordered Terri Tankersly to put a cloth on the kitchen table. He then ordered the victim to go to the kitchen and lie upon her back upon the table, with her head hanging over the edge. He threatened to knock her brains out if she didn't comply. When thus positioned, he ordered Miss Murphy to open her mouth, and "he stuck his penis down my throat". She gagged and pushed him away, at which time he viciously struck her with his fist upon the cheek, the mouth and the forehead. The victim commenced crying again. He made her lie back down again, and inserted his penis down her throat and moved it in and out, and she started to vomit and pushed him away again. He struck her with his fist upon the abdomen and upon the right side. She got off the table, crying, and asked for a drink of water. His response was to make her get down on her knees and he urinated in her mouth, making her swallow most of the urine.

Lundy then ordered the victim back into the bed, already occupied by the disrobed Terri Tankersly. He first ordered Miss Murphy to insert her finger into the other girl's vagina and manipulate it, despite Terri Tankersly's begging him not to. After this was done he ordered Miss Murphy to suck the other girl's vagina. When compliance did not suit Lundy, he struck Miss Murphy twice upon the back of her head with his fist. She then performed the cunnilingus for about two minutes before becoming sick. He then allowed her to stop. Terri Tankersly testified that while Miss Murphy was performing cunnilingus upon her that Lundy was "trying to have relationship with her in her rear end".

Finally, Lundy had normal intercourse with the victim again, for more than thirty minutes, without ever reaching a climax. He discussed tying Miss Murphy to the bed and keeping her for two or three days, and even had the other girl to tie some socks together to use for bindings. However, at the victim's suggestion, he went to sleep. Significantly, Terri Tankersly, the fourteen year old companion of Lundy and with whom he had admittedly been having sexual intercourse for years, fled the apartment as soon as Lundy was asleep. She tried to get Miss Murphy to go with her, expressing the fear that he was going to kill both of them; but the victim was afraid to leave at that time for fear of awakening Lundy, who had an arm and leg across her. Some two hours later, when he turned over, she fled the premises, hailed a passing taxi, and immediately reported having been kidnapped and raped.

All of this obscene detail has been necessary to this opinion because of the serious question raised as to whether the intercourse was forcible rape. No weapon was ever exhibited, and no resistance was offered. Both sides rely upon the case of King v. State, 210 Tenn. 150, 357 S.W.2d 42 (1962). Unquestionably the act to constitute rape must be forcibly done and against the will of the female. Force

means power, compulsion or strength directed toward an end. And against her will means against or without her consent express or implied. King v. State, supra. Whether force was used is a jury question. In this case, apparently no significant force was directly employed in conjunction with the acts of normal intercourse. The victim was told to submit and she did. But, in context, it cannot be said that she consented, nor can Lundy seriously contend that she did. At all times she was a captive, in justified fear for her very life. Admittedly having had some prior sexual experience, she chose to submit to avoid injury or even death. Consent obtained by force or fear due to threats of force is void and the offense rape. 1 Wharton's Criminal Law and Procedure 649, § 311. Her tacit consent by non-resistance has been found by the jury to be no consent under the circumstances. She did not consent to being kidnapped and imprisoned; and it was in that context that she was raped. It would be an unreasonable misapplication of the law to require as a matter of law that a captured female be required to incur a beating before it could be said that demanded intercourse with her was rape. The force and restraints inherent in the situation supply the forcible character to the act. We hold in response to the first two assignments of error, that the convicting evidence on the charge of rape is legally sufficient to support the conviction and that it was not error for the trial judge to refuse to direct a not guilty verdict. A jury question was certainly presented by the proof.

▆▆▆ The cunnilingus which Lundy forced the two girls to engage in is the basis for his crime against nature conviction. It is assigned as error that both convictions cannot stand because "there was only one common intent". It is clear under these facts that different evidence is required to establish the two different acts, and that a different and separate intent was reflected. The assignment is overruled. See Ward v. State, Tenn.Cr.App., 486

S.W.2d 292; Harris v. State, 206 Tenn. 276, 332 S.W.2d 675; and Rockett v. State, Tenn.Cr.App., 475 S.W.2d 561. Error is assigned upon the trial court's refusal to charge a certain "special request". It was defense counsel's theory that the State could not impeach any of the testimony of Terri Tankersly, whom they had called as a prosecution witness, and a note was passed to the trial judge, in response to his invitation for special requests, asking him to charge the law relative to the State's attesting to the credibility of the witnesses it calls. No specific language was tendered; so, in legal effect, no special request was made. The note said: "Defendant Noah Lundy requests the Court to give its standard and normal charge that one party to the case calling a witness in its behalf makes that person that side's witness and the legal effect thereof as to the other testimony being binding and the side calling the witness attesting for credibility". The charge as given was correct. If more specificity and enlargement on a given point was desired it was necessary to tender the exact charge requested. The trial judge noted: "Refused. Ambiguous and unclear. The Court's charge was adequate as given". We need not reach the question of substantive law sought to be raised, because the "special request" was not in a proper form to raise it. However, no authority is cited for the theory, if it be plaintiff-in-error's theory, that a criminal court judge must charge the jury that the State vouches for the credibility of each and every one of its witnesses, and is bound by their testimony. The assignment is overruled.

▆▆▆ A related assignment complains that the State was permitted to ask questions of Terri Tankersly, their witness, which were of an impeaching nature. We do not find that this happened. On redirect examination she was asked questions which amplified her answers upon cross-examination, as was proper.

▆▆▆ Error is assigned upon the admission into evidence of Lundy's written

statement to officers, voluntarily given after full warnings. The sense of the assignment seems to be that the statement was not a full confession, so was inadmissible as a confession. It was admissible for whatever probative value that it had upon the issue of guilt, and the assignment is overruled.

 The next assignment has to do with the victim's report to officers immediately after her escape. She gave them a detailed account of the events, substantially as she testified to them. One of the officers was permitted to testify as to exactly what she reported by referring to the written statement which he took from her. It is well settled that the report of a rape victim, given within a reasonable time after the fact, is competent evidence. King v. State, supra. That the report was reduced to writing adds to the accuracy of the officer's testimony, and certainly does not render the otherwise competent evidence incompetent.

 The next assignment of error relates to the statement of Terri Tankersly, also given to officers shortly after the crime. Complaint is made that this statement was incompetent evidence. We find that this evidence was first gone into on cross-examination and thus made competent. The trial judge committed no error.

 Error is assigned because of an attempt by the State to prove that Lundy had physically abused Terri Tankersly's sister years before in a totally unrelated occurrence. The trial court properly excluded the evidence and instructed the jury to disregard the question. State's counsel made some remarks in the presence of the jury that were overly zealous in support of this incompetent line of proof, and in a different case could constitute prejudicial error. State's counsel alluded to "the defendant's violent nature" as being a matter of fact; and said that the State was trying to show that he was "that kind of a person". However, in the context of the undisputed facts of this case we hold any error to have been harmless beyond a reasonable doubt. Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); Huffman v. State, Tenn.Cr.App., 458 S.W.2d 29 (1970).

The next assignment of error is that the Court erred in convicting the defendant of a crime against nature on the theory of aiding and abetting. Another related assignment is that the conviction on the charged act of cunnilingus is void and invalid because cunnilingus "is not prohibited as a crime against nature in T.C.A. § 39–707".

 This Court has recently held, in the context of a case of forcible cunnilingus committed by the defendant upon a victim, that the act was a crime against nature as proscribed by T.C.A. § 39–707. Locke v. State, Tenn.Cr.App., 501 S.W.2d 826 (1973). Again, in the case sub judice, you have the element of coercion, this time motivating both of the literal participants. Here, the direct participants were both female. Plaintiff-in-error contends that neither of the females was committing a crime under the circumstances, and reasons that there was no principal criminal whom Lundy could have been guilty of aiding and abetting.

Lundy was not indicted as an aider and abettor. He was charged: "* * * unlawfully and feloniously did commit a crime against nature in and upon one Sharon K. Murphy; that is to say, that the said Noah Lundy, Alias, did make, force and compel the said Sharon K. Murphy to perform an act of cunnilingus upon the said Terri Tankersly, a female, * * *".

 The evidence certainly supports the factual allegations of the indictment. Lundy was not accused of aiding and abetting, but of forcing the commission of the proscribed act. Whether Sharon K. Murphy is called the victim, or Terri Tankersly, or nobody, is really immaterial. Crimes against nature may be victimless, with both

parties as accomplices of one another; or they may involve an innocent person forced to participate, or incapable of consenting. In the case sub judice, both of the females were victimized.

■ The trial judge did charge the law of principal guilt by being present, aiding and abetting, as set out in T.C.A. § 39–109, as follows:

"39–109. Aiders and abettors deemed principal offenders.—All persons present, aiding and abetting, or ready and consenting to aid and abet, in any criminal offense, shall be deemed principal offenders, and punished as such."

We also have a statute which provides for the conviction of an aider and abettor whether the principal offender has been convicted or not. T.C.A. § 39–110. That statute does, however, presuppose that a principal exists; while in the instant case Lundy is himself the only principal. By forcing others to do an act which society has proscribed Lundy is himself directly responsible. The force and coercion was his active contribution to the cunnilingus. While the judge's charge dealt with aiding and abetting, and with conspiracy, and did not directly charge the jury that Lundy would be himself criminally chargeable with acts which he forced others to perform, the charge did say "If, therefore, you find from the proof beyond a reasonable doubt that this offense has been committed by the defendant in manner and form as charged in the indictment * * * the defendant is guilty of the crime against nature and you should convict him of this offense * * *". In the absence of a special request for further instructions, we do not find reversible error in the charge. While the questions presented by the factual situation in this case are fuel for an academic trip of almost limitless dimensions, and would delight any law professor,

we confine ourselves to holding that forced cunnilingus is a crime against nature, and that Lundy was more than an aider and abettor and was convicted under the indictment as the principal offender who forced the criminal act. No other principal is necessary to his conviction.

Error is assigned upon the trial court's ruling that defense counsel could not cross-examine the victim by asking her about specific statements that she supposedly made to defense counsel in a pre-trial interview in defense counsel's office. The predicate for this ruling was the fact that defense counsel did not tell the witness that he was counsel for the defendant, but only that he was a lawyer in the case. The final assignment of error is related to this one, in that it accuses State's counsel of making prejudicial remarks about defense counsel during argument before the jury about the admissibility of these questions.

■ We note that the trial judge permitted cross-examination upon the same subject matter, but simply ruled out predicating the cross-examination questions upon the prior questions and answers. From the tender of proof in the record we do not believe that defendant was prejudiced by what we deem to have been too restrictive a ruling. Defense counsel was under no positive duty to affirmatively identify his role in the upcoming case before questioning a witness. He apparently made no misrepresentation, and was apparently seeking the truth. State's counsel was unduly critical of defense counsel in indicating before the jury that State's counsel should have been present at the interview, etc., but we hold this error to be harmless in the context of this case.

We have carefully examined all assignments of error. We affirm the convictions.

OLIVER and DWYER, JJ., concur.