**Kerry MORGAN, Appellant,**

v.

**STATE of Tennessee, Appellee.**

Court of Criminal Appeals of Tennessee.

Feb. 5, 1979.

Certiorari Denied by Supreme Court March 26, 1979.

B. C. McInturff, Kingsport, for appellant.

William M. Leech, Jr., Atty. Gen., Robert L. Jolley, Jr., Asst. Atty. Gen., Nashville, Carl K. Kirkpatrick, Jr., Dist. Atty. Gen., R. Jerry Beck, Asst. Dist. Atty. Gen., Kingsport, for appellee.

## OPINION

WALKER, Judge.

In three cases tried together in Sullivan County, the jury found the appellant, Kerry Morgan, guilty of rape, kidnapping and crime against nature and fixed respective punishments of 32 years, not less than four nor more than eight years, and not less nor more than ten years in the penitentiary. The trial judge ordered the kidnapping sentence to be served consecutive to that of rape and the crime against nature to be served concurrent with that of rape.

At about 7:00 a. m., Saturday, October 15, 1977, Janet Irene Morrisett, age 13, had begun to deliver newspapers on her route in Kingsport when she was passed by a man in a red Monte Carlo Chevrolet with Virginia license plates. The man returned and asked to buy a paper. After she sold him one and turned to go, he seized her from behind, put his hand over her mouth and forced her into his car. He then drove away, forcing her to put her head in his lap.

By Janet's testimony, the appellant threatened her and forced her to remove some of her clothing and inserted his penis into her private parts, forcibly and against her will. He also licked her private parts. While he sought to enter her again, he ejaculated on the lip of her private parts, after which he returned her to the place where he had found her. He told her to get out of the car and not look back. He then drove away.

Janet promptly went in a nearby store and asked to use the telephone. She was crying and reported to her father that a man had tried to rape her. Her father as well as officers came and the investigation began.

Janet described the automobile and the man involved in detail. She picked the appellant's photograph from an array of pictures and at trial she positively identified him as her assailant.

The appellant lives in nearby Pennington Gap, Virginia, and drives a similar red Monte Carlo automobile owned by his wife. Tennessee and Virginia officers found this car at his home on November 2 and the Tennessee officers asked the appellant to accompany them to the Pennington Gap Police Department. There they took a statement from him and also took fingerprints, palm prints and samples of pubic and head hair.

On the newspaper Janet had sold her attacker, the FBI found latent palm prints matching those of the appellant. Semen was also on some of her underclothing.

At about 8:15 a. m. on October 15, Dr. J. Kent Blazer examined Janet. There was no evidence of tears of her hymen and no gross evidence of blood. Inside the vagina there was an increase in the amount of secretion present. From a depth of about an inch and a half in the vagina, Dr. Blazer removed a sample of this secretion. In it he found small numbers of nonmobile spermatoza. In his opinion it was unlikely that sperm would be found at that depth inside the vagina without the person having penetrated the vulva or labium with his penis. Dr. Blazer's findings are consistent with such penetration of Ms. Morrisett. Several months after this examination, the girl returned to Dr. Blazer and he explained her physiology to her.

Testifying in his own behalf, the appellant denied abducting, raping, attempting to rape or licking the private parts of a girl in Kingsport on October 15 or any other day. By his testimony he spent the night at his home with his wife and child. He received a long distance telephone call at about 6:15 or 6:30 from his mother-in-law and had a caller at about 7:00 a. m. He went back to bed and got up around 10:00 a. m. to put up Celotex with the help of his brothers-in-law. His wife corroborated his testimony that they slept together that night and that he got up at about 10:00 a. m. She said that she went for two additional boxes of Celotex that morning. Rick Martin, his brother-in-law, corroborated his testimony concerning the installation of the Celotex, and the appellant's mother-in-law corroborated his testimony about her call.

The appellant, smooth shaven at trial, denied having a beard on October 15 as testified to by Ms. Morrisett and offered a number of witnesses to support him on that question. The state offered evidence to the contrary. The appellant also testified that he was not wearing a uniform at that time as the girl claimed.

The appellant said that he was coerced into signing a statement and that he did not know what was in the statement he signed. He explained his palm print on the newspaper by saying that Officer Flanary of the Kingsport Police Department asked him to hold the newspaper for him to take a photo-

graph. In rebuttal the officers denied that this took place. The appellant also presented a number of character witnesses.

In challenging the sufficiency of the evidence, the appellant argues that the evidence does not show that the girl was raped, that there was no proof of penetration, that the offense of crime against nature also requires penetration and none was shown here, and that he could not be convicted of these three charges because they were all part of the same transaction.

■ When the girl first reported the offense, she said that a man had tried to rape her. At trial she explained that she had not known what penetration meant when she had made that statement. By Dr. Blazer's testimony, sperm would not have been found so deep in the vaginal vault without penetration. His testimony and that of Ms. Morrisett support penetration. Her testimony is ample on all the elements of rape. *King v. State*, 210 Tenn. 150, 357 S.W.2d 42 (1962).

On similar facts to those of this case, we affirmed the conviction for crime against nature in *Locke v. State*, 501 S.W.2d 826 (Tenn.Cr.App.1973), rejecting the contention that the statute was unconstitutional as indefinite, vague and uncertain, a claim also made here. Subsequently the United States Supreme Court also rejected Locke's similar contentions in *Rose v. Locke*, 423 U.S. 48, 96 S.Ct. 243, 46 L.Ed.2d 185 (1975).

■ In arguing that he cannot properly be convicted of these three charges, the appellant relies on the same transaction rule. Our Supreme Court has expressly rejected that test. *State v. Black*, 524 S.W.2d 913 (1975). The elements of the offenses are not the same and additional facts are necessary to prove each of them. Separate convictions were proper. *See Lundy v. State*, 521 S.W.2d 591 (Tenn.Cr. App.1974); *Cherry v. State*, 539 S.W.2d 51 (Tenn.Cr.App.1976).

■ The jury accredited the state's evidence and resolved the conflicts in favor of the state's theory of the cases. The evidence does not preponderate against those verdicts.

The appellant insists that the court erred in dismissing his motion to suppress evidence, thereby violating his constitutional rights. He cites *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

■ After a hearing out of the presence of the jury, the trial judge held that the appellant had been properly warned of his rights and had waived them. The evidence showed that the appellant accompanied the officers willingly to the police station in Jonesville, Virginia, and that he signed a waiver of his rights as well as the statement which denied any connection with the crimes. The trial judge properly held that his claim of coercion was without foundation. His finding is binding on this court. *State v. Chandler*, 547 S.W.2d 918 (Tenn.1977). In addition, we note that the appellant was not in custody and was free to leave at any time. In fact, he went outside several times during the questioning. He was then returned to his home and resumed his business of delivering a truckload of rocks. He was not arrested until several days later. Although he was carefully warned in accordance with *Miranda*, he was not in custody so as to require those warnings under the rule in *Oregon v. Mathiason*, 429 U.S. 492, 97 S.Ct. 711, (1977). *See Abbott v. State*, 509 S.W.2d 524 (Tenn. Cr.App.1973).

■ The appellant voluntarily gave the officers hair samples and allowed them to take fingerprints and palm prints. At that time he said he had nothing to hide, and he voluntarily signed consent forms. The appellant's wife gave officers permission to photograph her car. The appellant apparently complains because the officers had taken a photograph of the car before he arrived home. That photograph was not introduced into evidence, but, in any event, the car was plainly visible from the property next door and from the railroad property nearby. The appellant has not shown that any of his constitutional rights were violated and his motion to suppress was properly dismissed.

■ Morgan contends that the court erroneously instructed the jury on fingerprints when palm prints were actually involved. The evidence showed that the use of palm prints is similar to that of fingerprints. If error, this was harmless.

Likewise without merit are Morgan's contentions that the trial judge overemphasized carnal knowledge in his rape charge, that he improperly charged the law of crime against nature and that he improperly commented on the evidence in his instructions in violation of the Tennessee Constitution.

■ Morgan argues that our rape statute, TCA 39–3701, is unconstitutional in that it is discriminatory. He relies on *Meloon v. Helgemoe*, 564 F.2d 602 (1st Cir. 1977), *cert. denied* 436 U.S. 950, 98 S.Ct. 2858, 56 L.Ed.2d 793 (1978). That case is not applicable, because it considered a violation of the age of consent statute rather than forcible rape. It expressly limited itself to that New Hampshire statute. We considered a similar challenge in *Stewart v. State*, 534 S.W.2d 875 (Tenn.Cr.App.1975), and found this statute constitutional against such attack.

■ We find no abuse of discretion on the part of the trial judge in ordering the kidnap sentence to run consecutive to that of rape. Implicit in the trial judge's reasons for imposing a consecutive sentence is a finding that the appellant is a dangerous offender under the guidelines of *Gray v. State*, 538 S.W.2d 391 (Tenn.1976). He found aggravating circumstances in these inherently dangerous crimes. The crimes to this young person were committed with force and threats. The trial judge also considered the age and immaturity of the 13-year-old girl who "would have been hard to distinguish from a school boy," and he could not understand what kind of a depraved mind would refuse the girl's pleas to let her go. He imposed the sentences to protect young people. In *Bethany v. State*, 565 S.W.2d 900 (Tenn.Cr.App.1978), this court recognized that the protection of young children may be taken into account when considering consecutive sentences.

The trial judge complied with *Gray* requirements.

Affirmed.

DUNCAN and DAUGHTREY, JJ., concur.