# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs December 4, 2007

## STATE OF TENNESSEE v. QUINCY BRYAN BANKS

**Appeal from the Criminal Court for Davidson County**
**No. 2005-B-1079     Seth Norman, Judge**

---

**No. M2007-00545-CCA-R3-CD - Filed April 11, 2008**

---

The Appellant, Quincy Bryan Banks, was convicted by a Davidson County jury of two counts of aggravated rape and one count of especially aggravated kidnapping. For these Class A felony convictions, Banks received concurrent twenty-three-year sentences for each aggravated rape conviction, to be served consecutively to a twenty-three-year sentence for especially aggravated kidnapping. On appeal, Banks challenges his convictions and resulting sentences, specifically asserting: (1) that the evidence is insufficient to support each of his three convictions and that the conviction for especially aggravated kidnapping violates the due process holding of *State v. Anthony*; and (2) that the aggregate sentence of forty-six years is excessive based upon: (a) misapplication of enhancing factors with regard to the length of the respective sentences; and (b) the erroneous imposition of consecutive sentences. After review, we conclude that Banks' challenges to his convictions are without merit. Accordingly, the convictions are affirmed. With regard to sentencing, however, we conclude that because Banks was sentenced under provisions of the June 7, 2005 sentencing amendments for crimes committed in November 2004, without a waiver of his ex post facto protections as required by statute, remand for a new sentencing hearing is required. Furthermore, because the sentencing record fails to demonstrate the requisite considerations for the imposition of consecutive sentencing, the case is also remanded for reconsideration of that issue and for entry of corrected judgment forms in accordance with this opinion.

### Tenn. R. App. P. 3; Judgments of Conviction Affirmed; Sentences Vacated;
### Remanded for New Sentencing Hearing

DAVID G. HAYES, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and ROBERT W. WEDEMEYER, J., joined.

David M. Hopkins, Nashville, Tennessee, for the Appellant, Quincy Bryan Banks.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel E. Willis, Assistant Attorney General; Victor S. Johnson III, District Attorney General; Dan Hamm and Sharon Reddick, Assistant District Attorneys General, for the Appellee, State of Tennessee.

**OPINION**

**Factual Background**

In November 2004, the victim, Kathleen Baker, was employed as a "roving manager" with The Mattress Firm, a retail establishment with stores in the Nashville area. As roving manager, Ms. Baker would substitute for store employees at different stores on different days. On November 29, Ms. Baker was assigned to the store in Belle Meade. At approximately 6:00 p.m. that evening, the Appellant entered the store. Ms. Baker was alone in the office area of the store, speaking on the telephone with Connie Rademacher, an employee at another store location. Ms. Baker informed Rademacher that she "didn't have good feelings about [the Appellant]," and Rademacher suggested that she maintain an open connection by laying the phone down without hanging up, which Ms. Baker did. Ms. Baker then greeted the Appellant, who informed her that he needed to purchase a mattress for his nephew. The two proceeded to the "value area" of the store, and Ms. Baker showed him some twin-sized mattresses. She returned to the office area to check the price on a floor model mattress, and the Appellant followed. At this point, the Appellant grabbed Ms. Baker from behind and held a knife to her throat, telling her he would kill her if she did not comply with his demands.

The Appellant then proceeded to throw Ms. Baker to the floor and ordered her to remove her pants. The victim tried to stall the Appellant and began speaking loudly, hoping that Rademacher would hear her through the open phone connection and summon help. Upon realizing that they were visible from the street because of the large glass windows, the Appellant questioned the victim about rooms in the back of the store. Upon seeing the open door to a small storage area, the Appellant again held the knife to Ms. Baker's back and forced her into the room at the rear of the store. Once inside the room, the Appellant pulled down his pants, grabbed the victim, and forced her to perform oral sex on him. Afterwards, he forced her to lie down on the floor and removed her pants, again threatening to kill her if she resisted. The Appellant then proceeded to rape the victim both vaginally and anally. During this time, the knife either remained in the Appellant's hand or was placed on the floor nearby.

Rademacher, becoming concerned after hearing Ms. Baker say, "Give me back my glasses" and "I will go with you," called her district manager, who called 911. Officer Robert Peterson responded to the scene to investigate a possible robbery. Upon entering the building, he noticed a pair of red shoes and a pair of eyeglasses on the floor in the office area, but he did not see anyone in the store. He proceeded to the rear of the store, where he heard a "commotion" and some movement. Peterson knocked on the door and heard a female ask for help, followed by a male voice saying that nothing was going on and to go away. Peterson then pushed open the door and observed the Appellant with no shirt on and his jeans partially unzipped and hanging from his hips. Ms. Baker was positioned on the floor wearing a red jacket and nothing else. Peterson drew his weapon and ordered the Appellant to kneel on the floor. Peterson observed a knife located directly in front of the Appellant when he knelt. The Appellant was then handcuffed and taken into custody.

Sergeant Twana Chick responded to the scene and spoke with Ms. Baker, whom she described as "hysterical, extremely, extremely upset, just hardly able to answer questions." The victim was taken to Nashville General Hospital, where a rape kit examination was conducted. The examination revealed red marks or scratches on the victim's neck, back, arm, and thigh, as well as two small bruises on her abdomen. Moreover, stool was found in her vagina, which was consistent with her report of anal rape followed by vaginal rape, and blood was found in her rectum. Samples were collected and sent for DNA analysis.

The Appellant's fingerprint was found on the knife, and DNA testing of an anal swab and Ms. Baker's pantyhose matched the DNA of the Appellant. Several weeks later, Ms. Baker discovered she was HIV-positive, and testing revealed that the Appellant, who had not worn a condom during the rapes, was also HIV-positive.

On May 13, 2005, a Davidson County grand jury returned a seven-count indictment charging the Appellant with six counts of aggravated rape, three rapes by the use of force or use of a weapon and, alternatively, three rapes resulting in bodily injury, and one count of especially aggravated kidnapping. Following a November 2006 jury trial, the Appellant was convicted of four counts of aggravated rape and one count of especially aggravated kidnapping. The trial court declared a mistrial with regard to the remaining two counts of aggravated rape. The court also merged the alternative aggravated rape convictions, resulting in two convictions for aggravated rape. A sentencing hearing was held on January 10, 2007, after which the trial court sentenced the Appellant to twenty-three years for each of the three Class A felony convictions. The court further ordered that the two sentences for aggravated rape be served concurrently, but consecutively to the sentence for especially aggravated kidnapping, resulting in an effective sentence of forty-six years as a violent offender. Following the denial of his motion for new trial, the Appellant filed the instant timely appeal.

**Analysis**

On appeal, the Appellant has raised two issues for our review. First, he challenges the sufficiency of the evidence supporting his three convictions. He also argues that his sentences were excessive.

**I. Sufficiency of the Evidence**

When a challenge is made to the sufficiency of the evidence, the relevant question for the reviewing court is "whether, after viewing the evidence in the light most favorable to the [State], *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *see also* Tenn. R. App. P. 13(e). Moreover, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. *State v. Pappas*, 754 S.W.2d 620,

623 (Tenn. Crim. App. 1987). This court will not reweigh or reevaluate the evidence presented. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978).

"A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973). A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal, a convicted defendant has the burden of demonstrating that the evidence is insufficient. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). These rules are applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a combination of both. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990).

### a. Aggravated Rape

As previously noted, the jury found the Appellant guilty of four counts of aggravated rape. Although the minutes of the court reflect that "Counts One and Four are merged and Courts Three and Six are merged," which would result in two convictions, four judgments of conviction for aggravated rape were entered. No reference to merger is made on the judgment forms. Thus, we are constrained to note that, for Department of Correction purposes, the record indicates that the Appellant is serving four separate sentences for aggravated rape from Davidson County. The concept of merger contemplates combining one or more convictions into a single conviction. The judgment forms should reflect which counts merge and which count survives as the predominate conviction, *i.e.*, aggravated rape by use of a weapon or aggravated rape with bodily injury. It is incumbent upon the trial court to make this determination. As such, as an initial matter, this case is remanded to the trial court for the purpose of entering amended or corrected judgments of conviction consistent with this instruction.

As relevant to this case, aggravated rape is defined as "unlawful sexual penetration of a victim by the defendant or the defendant by a victim accompanied by . . . [f]orce of coercion . . . and the defendant is armed with a weapon . . . [or] [t]he defendant causes bodily injury to the victim[.]" T.C.A. § 39-13-502(a)(1), (2) (2003). Sexual penetration is defined as "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal opening of the victim's, the defendant's, or any other person's body[.]" T.C.A. § 39-13-501(7) (2003). "Bodily injury" includes a cut, abrasion, bruise, burn or disfigurement, and physical pain or temporary illness or impairment of the function of a bodily member, organ, or mental faculty[.]" T.C.A. § 39-11-106(a)(2) (2003).

According to the Appellant, "the proof in this case does not support Mrs. Baker's assertion that the sex with [the] Appellant was not consensual." He argues that this assertion is supported by the following: the lack of physical injuries to both the victim and the Appellant; that, upon arrival, the police officer did not hear evidence of a struggle; that the doors to both the store and the storage room were unlocked; that the knife was at times within the reach of the victim and she failed to use

it for her defense; and that Ms. Baker testified that she told the examining nurse that oral sex had occurred, while the nurse testified that Ms. Baker indicated that no oral sex had occurred.

There is no requirement in this state that the victim of a rape forcibly resist the actions of the perpetrator or, as the Appellant seems to suggest, employ all the resistance of which she is physically capable before a conviction may occur. *See White v. State*, 540 S.W.2d 287, 288 (Tenn. Crim. App. 1976). The question of whether force was used is for the jury. *Lundy v. State*, 521 S.W. 2d 591, 594 (Tenn. Crim. App. 1974). Essentially, the Appellant's argument of consensual sex is a challenge to the credibility of the victim's testimony. However, all questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. *Pappas*, 754 S.W.2d at 623. The jury viewed all the witnesses, heard their testimony, and observed their demeanor on the stand. This court will not reweigh or reevaluate the evidence presented. *Cabbage*, 571 S.W.2d at 835.

Review of the record before us reveals that the evidence presented was more than sufficient to support the two convictions for aggravated rape. Ms. Baker testified that the Appellant grabbed her, held a knife to her throat, and forced her into the storage room at the back of the store. Once there, he threatened to kill her if she did not comply with his demands. After forcing her onto the floor, he then proceeded to rape her both vaginally and anally. The Appellant was arrested at the scene, and DNA evidence established that sexual penetration had occurred between the Appellant and the victim. The physical examination revealed evidence of both vaginal and anal penetration, as well as several scratches and bruises on Ms. Baker's body. This evidence is more than sufficient to allow a jury to conclude that the Appellant engaged in unlawful sexual penetration of the victim and that he used force or coercion while armed with a weapon. Moreover, the proof establishes that the Appellant inflicted bodily injury upon the victim based upon the testimony of the examining nurse.

As noted, the Appellant was prosecuted under alternative theories for three separate acts of aggravated rape, which resulted in the return of an indictment charging six counts of aggravated rape, *i.e.*, three counts of aggravated rape by use of a weapon and three counts of aggravated rape with bodily injury. The proof at trial established anal penetration, vaginal penetration, and penetration per os. We recognize that the technical record in this case notes that a mistrial was declared with regard to one of the three acts of aggravated rape, specifically Counts 2 and 5. Moreover, the record is absolutely void of any reference or citation to the record with regard to which of the three acts of rape, *i.e.*, vaginal, anal, or penetration per os, resulted in a mistrial or, for that matter, which of the two acts resulted in convictions. Obviously, this inadequacy in the appellate record frustrates appellate review. Nonetheless, because the evidence presented in this case amply supports three separate acts of aggravated rape by the Appellant, albeit a mistrial of one, the challenged convictions are affirmed.

**b. Especially Aggravated Kidnapping**

The Appellant also contends that the evidence is insufficient to support his conviction for especially aggravated kidnapping. Specifically, he argues that there is "no proof [the] Appellant locked any of the doors behind which he and Mrs. Baker were located, there is no proof that [the] Appellant confined, moved, or detained Mrs. Baker beyond that which was essentially incidental to the accompanying felony of aggravated rape." While framing the second part of his argument as a sufficiency argument, the Appellant is actually asserting a due process challenge pursuant to *State v. Anthony*. The State responds that the evidence is sufficient to support the conviction and, further, that the Appellant has waived appellate review of his *Anthony* claim. We agree.

Especially aggravated kidnapping is "false imprisonment . . . [a]ccompanied with a deadly weapon . . . ." T.C.A. § 39-13-305(a)(1) (2003). False imprisonment occurs when an individual "knowingly removes or confines another unlawfully so as to interfere substantially with the other's liberty." T.C.A. § 39-13-302(a) (2003). As noted by the State, there is no requirement that a victim be confined behind a locked door. The evidence presented established that the Appellant grabbed the victim by the arm, while holding a knife, a deadly weapon, and forced her into the storage room at the back of the store. Once inside the room, he threatened to kill her, while still holding the knife, and proceeded to rape her. This evidence is sufficient to allow a rational juror to conclude that the Appellant unlawfully confined Ms. Baker so as to substantially interfere with her liberty.

With regard to the Appellant's *Anthony* argument, the State asserts that the Appellant has waived review of the issue by his failure to include it in his motion for new trial. In his motion for new trial, the Appellant raised only the issues of sufficiency of the evidence and sentencing. Tennessee Rules of Appellate Procedure 3(e) states, in pertinent part, that "in all cases tried by a jury, no issue presented for review shall be predicated upon error in the admission or exclusion of evidence . . . unless the same was specifically stated in a motion for a new trial; otherwise such issues will be treated as waived." Tenn. R. App. P. 3(e); *see State v. Martin*, 940 S.W.2d 567, 569 (Tenn. 1997) (holding that a defendant relinquishes the right to argue on appeal any issues that should have been presented in a motion for new trial); *State v. Dodson*, 780 S.W.2d 778, 780 (Tenn. Crim. App. 1989). When an issue is raised for the first time on appeal, it is typically waived. *State v. Alvarado*, 961 S.W.2d 136, 153 (Tenn. Crim. App. 1996). Nonetheless, whether properly assigned or not, we may address the issue in the event there was plain error on the part of the trial court under Rule 52(b) of the Tennessee Rules of Criminal Procedure. *State v. Smith*, 24 S.W.3d 274, 282 (Tenn. 2000); *State v. Ogle*, 666 S.W.2d 58, 60 (Tenn. 1984). In *State v. Adkisson*, this court established five factors to be applied in determining whether an error is plain: (a) the record must clearly establish what occurred in the trial court; (b) a clear and unequivocal rule of law must have been breached; (c) a substantial right of the accused must have been adversely affected; (d) the accused [must not have waived] the issue for tactical reasons; and (e) consideration of the issue must be "necessary to do substantial justice." 899 S.W.2d 626, 639 (Tenn. Crim. App. 1994) (citing Tenn. R. Crim. P. 52(b)).

Our supreme court has previously held that a kidnapping conviction violates due process if it is essentially incidental to the commission of another offense. *State v. Anthony*, 817 S.W.2d 299, 306 (Tenn. 1991). The court, in setting forth the standard to determine whether kidnapping was

essentially incidental to the underlying offense, held that in order to establish a separate kidnapping conviction, it must be determined "whether the confinement, movement, or detention [was] essentially incidental to the accompanying felony." *Id*. at 305. The court, in *State v. Dixon*, 957 S.W.2d 532 (Tenn. 1997), clarified the standard and noted that:

> *Anthony* and its progeny, however, are not meant to provide the rapist a free kidnapping merely because he also committed rape. The *Anthony* decision should only prevent the injustice which would occur if a defendant could be convicted of kidnapping where the only restraint utilized was that necessary to complete the act of rape or robbery. Accordingly, any restraint in addition to that which is necessary to consummate rape or robbery may support a separate conviction for kidnapping.

957 S.W.2d at 534-35. Thus, the court reasoned that, if it was established that the confinement is beyond that necessary to accomplish the accompanying felony, the next inquiry should be whether the additional movement or confinement: (1) prevented the victim from summoning help; (2) lessened the defendant's risk of detection; or (3) created a significant danger or increased the victim's risk of harm. *Id*. at 535.

In the instant case, we decline plain error review as the record fails to establish that consideration of the issue is "necessary to do substantial justice," because no *Anthony* violation was established based upon the facts presented. The proof fails to establish that the especially aggravated kidnapping was incidental to the commission of the aggravated rapes because the movement of the victim here lessened the Appellant's risk of detection and prevented the victim from summoning help. The record demonstrates that the initial sexual encounter began while in the office area. Thus, the additional movement to the storeroom was in excess of that needed to accomplish the rape. The proof suggests that the Appellant removed the victim to the back of the store only upon realizing that he was located in front of large glass windows and in the public's view. Clearly, after relocation of the victim, it would have been more difficult for her to have summoned help while located in a storeroom at the rear of the store. Accordingly, we cannot conclude that due process principles were offended in this case, and, as such, plain error review is not warranted.

## II. Sentencing

Next, the Appellant contends that the trial court erred by imposing sentences of twenty-three years for each conviction. He also contends that the court erred by ordering that the especially aggravated kidnapping sentence be served consecutively to the aggravated rape sentence. When an accused challenges the length, range, or manner of service of a sentence, this court has a duty to conduct a *de novo* review of the sentence with a presumption that the determinations made by the trial court are correct. T.C.A. § 40-35-401(d) (2003); *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). The party challenging a sentence bears the burden of establishing that the sentence is erroneous. T.C.A.§ 40-35-401(d), Sentencing Comm'n Cmts.

In response to *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531 (2004), our sentencing act was amended effective June 7, 2005. The Compiler's Notes to Tennessee Code Annotated section 40-35-210 provide that:

[o]ffenses committed prior to June 7, 2005, shall be governed by prior law, which shall apply in all respects. However, for defendants who are sentenced after June 7, 2005, for offenses committed on or after July 1, 1982, the defendant may elect to be sentenced under the provisions of the act by executing a waiver of such defendant's ex post facto protections. Upon executing such a waiver, all provisions of the act shall apply to the defendant.

The three crimes for which the Appellant was convicted all occurred on November 29, 2004, well before the 2005 amendments to our sentencing act. However, the Appellant was not sentenced until January 10, 2007. Thus, the Appellant could have elected to be sentenced either under the pre-2005 sentencing law or the post-amendment law.

No waiver of the Appellant's ex post facto protections is contained in the record. Thus, the Appellant's sentences would be governed by the pre-2005 law. However, at the sentencing hearing, the State argued application of the post-amendment law, as evidenced by its argument for application of enhancement factors corresponding only to the post-amendment provisions. Moreover, the Appellant's trial counsel also argued application of the amended act at the sentencing hearing. Additionally, the trial court specifically found enhancement factor (21), that the Appellant knew or should have known that, at the time of the offense, he was HIV-positive. Factor (21) was not available under the pre-2005 law; thus, it is apparent that the trial court was also applying the post-amendment law. *See* T.C.A. § 40-35-114 (Supp. 2005); T.C.A. § 40-35-114 (2003). Moreover, on appeal, the Appellant specifically cites as authority to post-amendment provisions when he argues that the trial court should have begun at the minimum sentence within the range, rather than at the mid-point as provided in the pre-2005 amendments. The record makes clear that the trial court did in fact begin at the mid-point as was applicable under the pre-2005 provisions.[1] Based upon these facts, it is evident that the Appellant was sentenced under the provisions of <u>both</u> the pre-2005 amended act and the post-amendment law, the latter occurring without an ex post facto waiver.

---

[1]
THE COURT: . . . And General, the presumption is that we start at the mid-point at the range, I believe; is that correct, class A?

[THE STATE]: That's correct, mid-point of the range on an A and certainly with the enhancement factors up from there, up from 20.

The post-amendment law removed the presumptive sentence language from our Sentencing Act and mandated only that the trial "court shall impose a sentence within the range of punishment. . . ." T.C.A. § 40-35-210(c) (Supp. 2005).

Accordingly, we remand for sentencing under the pre-2005 sentencing provisions, which were in effect at the time of the crimes, as modified by *Gomez II*,[2] or, upon written waiver of ex post facto protections, the Appellant may elect to be sentenced under the post-amendment sentencing law as permitted by the statute. At the re-sentencing hearing, neither the State nor the Appellant is confined to the proof at the prior hearing and may introduce additional proof as relevant to the hearing and as authorized by the applicable sentencing law.

Obviously, application of enhancing factors will be dependent upon which sentencing provision, *i.e.*, pre-2005 or post-2005, is elected. Nonetheless, we extend review of the challenged factors found by the trial court in this case. The Appellant challenges the application of three[3] enhancement factors: factor (1) that the Appellant has a previous history of criminal convictions or criminal behavior; factor (5) that the Appellant treated, or allowed a victim to be treated, with exceptional cruelty during the commission of the offense; and factor (21) that the Appellant knew or should have known that, at the time of the offense, he was HIV-positive.

If the Appellant elects to be sentenced under the pre-2005 law, the trial court must proceed with its application of enhancement factors as mandated in *Blakely* and *Gomez II*, which provide that, other than a prior conviction, any fact which increases the penalty beyond the prescribed statutory maximum must be submitted to a jury, rather than a judge, and proven beyond a reasonable doubt. *Blakely*, 542 U.S. at 301, 124 S. Ct. at 2536. As such, the trial court, upon remand, may not apply any enhancement factors which require additional findings of fact beyond those found by the jury, other than a prior conviction or an enhancement factor admitted by the Appellant at trial or at the sentencing hearing. *Id.* at 301-04, 124 S. Ct. at 2536-38. However, in applying factor (1),[4] the court will be allowed to consider only the Appellant's prior conviction for misdemeanor theft, or any other prior conviction established, but not the three pending charges for aggravated robbery, proof of which was admitted at the sentencing hearing. In order to consider these pending charges, the sentencing court would be required to make a factual finding that the Appellant had, in fact, committed these offenses, which would violate the holding of *Blakely*.[5]

If the Appellant elects to proceed under the post-amendment law, with regard to factor (1), the court may consider the Appellant's prior conviction for misdemeanor theft, or any other conviction established, as well as the three pending charges for aggravated robbery because, at the

---

[2]*State v. Gomez*, 239 S.W.3d 733 (Tenn. 2007) (concluding that *Blakely* has application to this State's sentencing scheme).

[3]In imposing the twenty-three-year sentences, the trial court specifically found that "enhancement factors one, five and 21 do apply in this particular case." Thus, contrary to the Appellant's argument, the trial court did not apply enhancement factor (4) in determining the sentence length.

[4]Although prior convictions are encompassed within enhancement factor (1) under the post-amendment law, under the 2003 statute, the enhancement factor regarding prior criminal convictions was actually factor (2).

[5]In the event the aggravated robbery charges resulted in criminal convictions, they obviously could be considered.

Appellant's sentencing hearing, a detective testified regarding the robberies and the Appellant's confessions, as well as introducing surveillance photographs. Our supreme court has held that prior criminal acts for which there has been no conviction may constitute "criminal behavior" within the meaning of the statute. *State v. Carico*, 968 S.W.2d 280, 288 (Tenn. 1998); *see also State v. Anthony Joel Allen, Jr.*, No. 01C01-9612-CC-00514 (Tenn. Crim. App. at Nashville, May 7, 1998) (while it is impermissible to use only arrest records to establish criminal behavior, enhancement is permissible when the episodes of criminal behavior are established by the testimony of witnesses).

With regard to factor (5), the Appellant contends, and the State concedes, that the record fails to establish that the victim was treated with exceptional cruelty during the commission of the offense. We agree. *See State v. Manning*, 883 S.W.2d 635, 639 (Tenn. Crim. App. 1994); *State v. Edwards*, 868 S.W.2d 682 (Tenn. Crim. App. 1993). With regard to factor (21), the Appellant argues that he "was unaware he carried the HIV virus until after he was arrested." Review of the record reveals that the trial court made no finding that the Appellant knew, or should have known, that he was HIV-positive when he committed the rapes of the victim. As such, we are unable to review application of this factor. Upon remand, the court should make such determination and apply the factor based upon its finding. Moreover, we are constrained to note that the court, upon remand, should not apply this factor to the kidnapping conviction, as the statute specifically notes that it is only applicable to the aggravated rape convictions.

Finally, following the Appellant's election of which sentencing law to proceed under, the trial court must determine the appropriate presumptive sentence at which to begin. The trial court will begin sentencing at the presumptive minimum sentence of twenty years if the Appellant proceeds under the pre-2005 law but must begin at fifteen years if the Appellant elects to proceed under post-amendment law.

**b. Consecutive Sentencing**

The Appellant also contends that the trial court erred in ordering that his sentence for especially kidnapping be served consecutively, resulting in an effective sentence of forty-six years. He asserts that the court failed to articulate its reasoning for the imposition of consecutive sentencing as required by law and that the record fails to justify the sentence.

In imposing partial consecutive sentencing in this case, the trial court relied upon the finding that the Appellant was a dangerous offender, specifically finding that the:

> Court also finds that . . . under multiple convictions item four does
> apply, that the [Appellant] did, in fact, cause great bodily harm to the
> person in this particular case. Yeah, factor number four, that he did,
> in fact, infect the victim with HIV during the performance of this act.

Contrary to the Appellant's assertion, the trial court found that the Appellant was a dangerous offender, relying upon subsection (4) to impose partial consecutive sentences. *See* T.C.A. § 40-35-

-10-

115(4) (2003). However, as our supreme court decisions have held, this sole finding does not end the inquiry as to whether consecutive sentences may be imposed. Case law clearly holds that in addition to finding that a defendant meets one of the statutory classifications of Tennessee Code Annotated section 40-25-115 for consecutive sentencing, the court must find that "(1) the [aggregate] sentences are necessary in order to protect the public from further misconduct by the defendant, *State v. Wilkerson*, 905 S.W.2d 933, 938 (Tenn. 1995); and (2) 'the [aggregate sentence] terms are reasonably related to the severity of the offenses.'" *State v. Taylor*, 739 S.W.2d 227, 230 (Tenn. 1987); *see also* T.C.A. § 40-35-115, Sentencing Comm'n Cmts. ("Consecutive sentences should not routinely be imposed in criminal cases, and the aggregate maximum of consecutive terms must be reasonably related to the severity of the offenses involved."). The record in the present case is devoid of either of these considerations. Accordingly, in view of the necessity for remand for determination of the proper length of sentences, we likewise remand for determination of the propriety of consecutive sentencing.

## CONCLUSION

Based upon the foregoing, the Appellant's judgments of conviction are affirmed. The sentences imposed for the respective convictions are vacated, and the case is remanded to the trial court for a sentencing hearing, following the election by the Appellant to proceed under either the pre-2005 sentencing law or the post-amendment law with waiver of ex post facto protections. Moreover, we remand for the determination of the propriety of consecutive sentences and for entry of corrected judgments of conviction consistent with this opinion.

_____
DAVID G. HAYES, JUDGE